## IN EQUITY.—MARCH, 1856.

## BENJAMIN F. HARDY *vs.* ELI S. RUGGLES, A. G. THURSTON, B. W. FIELD, and W. GOODALE.

The Act of 11th July, 1851, abolishing the necessity of having certain instruments stamped and recorded, does not include chattel mortgages.

Chattel mortgages, duly recorded within thirty days after their execution, and being otherwise valid, are good as against third parties.

A clause in a mortgage of stock in trade, allowing the mortgagor to retain possession until default, and to sell the goods in the ordinary course of business, is not *conclusive* evidence of fraud, but is open to explanation.

A clause binding " all the *incoming* stock in trade of every kind and character whatsoever," will not bind goods not purchased with the proceeds of original stock, to the detriment of third parties.

Motion to dismiss the complainant's bill.

JUDGE ROBERTSON delivered the following decision:

The first question that presents itself for consideration in this cause, is that as to whether or not the chattel mortgage set forth in the complainant's bill, is a valid instrument under our laws.

Of its validity and binding force, as between the parties to it, I think there is no doubt.  In reference to instruments of this nature, it is provided by section 8th, page 248, vol. 1, Statute Laws, as follows, viz: " All bills of sale or pledges of chattel property, all contracts and agreements, all articles of marriage settlement, and powers of attorney or other instruments affecting the transactions of private individuals, the terms of which are not to be performed within one year, shall first be duly acknowledged and then recorded with the registrar as hereinbefore provided, within thirty days after the execution thereof, in default of which no such instrument shall be binding to the detriment of third parties, or conclusive upon their rights and interests."

On the part of the defendants Field and Goodale, it is contended that the foregoing provision for the registration of chattel mortgages, was repealed by the " Act to abolish the necessity of procuring certain agreements, and other documents, to be stamped and recorded;" passed by the legislature in the year 1851. But I am of opinion that the enactment of 1846, cited above, so far as it applies to chattel mortgages, was not repealed by the Act of 1851, but is still in force, for I find that the latter Act does not specify these, among the instruments not requiring to be stamped and recorded. The complainant sets forth in his bill that the mortgage in question, which purports to have been executed on the 1st day of May, 1854, was on the same day registered by the proper officer, as required by law. I am clearly of opinion, therefore, that if the registry law was fully complied with, (to which point I shall advert farther on) and the mortgage validated according to the Statute, it is of full force and virtue, unless the circumstances under which it was executed, or some provision contained in it, are of a character to render it void as against third parties.

It was argued by the counsel for Mr. Field, that, even if the mortgage was duly recorded as required by law, it cannot affect the rights of third parties, because the statute does not expressly provide that it shall do so. This objection appears to me altogether unsound, and I think the fair and reasonable construction of the latter part of the section cited above from the Statute of 1846, is, that chattel mortgages acknowledged and recorded within thirty days after the execution thereof, and being otherwise valid, are binding upon third parties and conclusive upon their rights and interests.

The learned counsel for Messrs. Field and Goodale contend that the mortgage before us is an illegal instrument on its face, and therefore void. I understand them to argue, that the provision contained in the mortgage, whereby the mortgagors were allowed not only to retain possession of the goods until default made, but to carry on their business as druggists in the meantime, and to sell any part of the mortgaged goods, is conclusive evidence of fraud as against third parties, and renders the mortgage void as to them.

Upon reference to the authorities it will be found that this question has frequently been raised in other countries, and, although the decisions are somewhat conflicting, it will be seen that the great weight of authority, particularly in modern times, is against regarding the clause now under consideration, as *conclusive* evidence of fraud. Such a clause in a chattel mortgage may be submitted to the court, by the party alleging fraud, together with any other stipulations in favor of the mortgagor, or circumstances in the case which tend to raise a presumption of fraud; but such presumption may be rebutted by the mortgagee, and all these circumstances shown to be consistent with honesty of purpose, and good faith in the parties to the contest. (Jones *vs.* Huggeford, 3 Metcalf, 517; Briggs *vs.* Parkman, 2 Metcalf, 264; Shurtliff *vs.* Willard, 19 Pickering, 211; Martindale *vs.* Booth, 3 Barn. & Ad. 505; Barrow *vs.* Paxton, 5 Johnson, 261.)

In the case before me, the continued possession and control of the property by the mortgagors, was not in pursuance of any *secret* agreement between the parties, but in accordance with the express terms of the mortgage, which, as already observed, is said to have been

duly registered. In order to effect the apparent object of the parties in this case, it was necessary that, if the mortgagee did not himself take possession of the goods, he should give authority to the mortgagors to sell; for, it was to secure the purchase money for those very goods that the mortgage was given, and that purchase money was to be realized out of the goods, by their sale in the way of business.

This brings me to another point made by the counsel for Messrs. Field and Goodale, viz: that, for aught that appears on the complainant's bill, they are *bona fide* purchasers. That is to say, according to the terms of the mortgage, the mortgagors were authorised to dispose of any part of the goods, and the purchases made by Messrs. Field and Goodale, respectively, are in accordance with those terms. The position of the learned counsel, in this particular, is undoubtedly right, and the fact that the mortgage contains the provision referred to, throws upon the complainant the *onus* of showing that Messrs. Field and Goodale are not *bona fide* purchasers, for a valuable consideration.

The most objectionable feature in the mortgage, and one upon which I have reflected deeply, is the clause which includes in the transfer "all the *incoming* stock in trade of every kind and character whatsoever." I am of the opinion, that so far as this provision was intended to apply to any incoming stock, other than goods which can be shown to have been bought and paid for, with monies arising from the sale of the stock in the store at the time the mortgage was executed, such provision must be regarded as void, so far as third parties are concerned. I think this is clear from the fact, that the sole object of the statutory provision for the registration of such instruments, is to obviate the necessity of an actual delivery of the goods and chattels, by the mortgagor to the mortgagee. The registration being made legal notice to all the world, that the property in the goods has passed to the mortgagee, although the mortgagor may still retain the possession of them, the inconvenience which would often result from a change of possession, is obviated, while creditors and purchasers are protected. (Hilliard on Mortgages, vol. 2, p. 244.) In the absence, then, of any statute of registration, delivery would be necessary, at least as regards all parties not chargeable with actual knowledge of the incumbrance. But, delivery by the mortgagor to the mortgagee, presupposes that the goods are in the possession, or under the control of the former. Unless they are in his possession, how can he make an actual delivery of them? If this is right, and delivery of the goods be indispensable in such case, how can the mortgagor transfer to the mortgagee, goods which he does not own at the time? How can he be said to make delivery of that which is not in his possession or within his control? Let me revert to my starting point, viz: that the statute of registration merely obviates the necessity of an actual delivery of the goods mortgaged, and it must, I think, appear clear that, neither by a mortgage accompanied by delivery, nor by a mortgage duly registered, is it in the power of a party to incumber, generally and unreservedly, an incoming stock of goods, so as to bind goods not purchased with the proceeds of those in his possession at the time. (See Broom's Leg. Max., 3d ed., p. 320.)

There appears to my mind a plain distinction between the mortgage now under consideration, and that, for instance, of all the stock on a

farm with the increase. In the latter case the mortgagor, it is true, conveys to the mortgagee the property in chattels not yet *in esse*, that is, the increase of the stock. But this increase is the fruit, and springs naturally out of the chattels enumerated in the mortgage. This, therefore, is a very different thing from attempting to incumber stock which might be procured on credit, from third parties. Including the increase in the mortgage of farm stock, is analogous to including in a mortgage of merchandise any other goods purchased and paid for with the proceeds of the original goods; the former being, in that case, the fruits of the latter. I have already stated that I consider such a contract legitimate and fair, but it appears to me very different from attempting to mortgage goods, to be subsequently procured on credit from third parties. To uphold as legal such a contract as that would, in my opinion, be holding out a direct inducement for the daily commission of fraud. I consider it void upon grounds of public policy. Such a practice would induce, among persons engaged in trade, a state of affairs embarrassing in the extreme. No one could safely trust his neighbor with an invoice of goods, on credit, without first inspecting the books in the Registrar's Office, in order to satisfy himself that, by doing so, he was not about to subject his property to the operation of some third party's mortgage. Our business men would, of course, find it impossible to procure goods on credit, in any other part of the world, except to a very limited extent.

There is another point which, I believe, was not urged by the learned counsel for either of the defendants, but which appears to me of some importance in settling the law affecting chattel mortgages. I refer to the fact that, in the body of the instrument now under consideration, express reference is made to a bill of items, for a full and complete description of the goods then in the mortgagor's store. The mortgage was accompanied by a schedule, to avoid the inconvenience of specifying the goods in detail. in the instrument itself. I am clearly of opinion that it was necessary for the complainant to register the schedule, or bill of items, together with the mortgage, and that, as this does not appear to have been done, the registration is incomplete, and not a full compliance with the law. If the registration is to be regarded as notice to third parties, then it ought to be full, embracing the instrument of transfer with all its appendages, at length; and, where actual notice is relied upon, it must be notice of the schedule as well as the mortgage. (Hilliard on Mortgages, Vol. 2, page 266.)

I express no opinion as to how far it may be necessary, in all cases like the present, to describe minutely the goods mortgaged, either in the body of the instrument, or in a schedule accompanying it, farther than to say that every such mortgage must afford, as far as possible, the means of identifying the property mortgaged. When this is done by means of an accompanying schedule, clearly the schedule ought to be placed upon record, together with the mortgage, for the former becomes a part of the latter, by being expressly referred to therein, as containing additional information.

The counsel for Mr. Goodale argued that the complainant had mistaken his *forum*, in coming to the equity side of the court, to ask for relief, and that his remedy is clearly at law, where he could obtain ample redress. But I think differently, being of opinion that the cir-

cumstances set forth in the complainant's bill show a proper case for the cognizance of the equity jurisdiction of the court. It appears to me that the learned counsel, to use a common expression of Lord Kenyon's, "blows both hot and cold" on this point, because, in another part of his argument, he contended stoutly that, at the time complainant filed his bill, he had no right of action, either at law or in equity, as the mortgage had not matured.

Some other technical objections were raised, but I consider them of little weight; and, while I think the frame of the complainant's bill might be altered for the better, in some important particulars, I am not disposed to be over nice in regard to such matters. The motion to dismiss the bill must be refused, and an opportunity afforded the complainant, to rebut the presumption of fraud, arising from the continued possession of the property by the mortgagors, with power to sell any part thereof; to bring home notice of the mortgage and schedule of property, to the defendants Field and Goodale, and, finally, to show that they are not *bona fide* purchasers for a valuable consideration.

Mr. Griswold and Mr. Ducorron for complainant.
Mr. Harris for Messrs. Ruggles & Thurston.
Mr. Bates for Mr. Field.
Mr. Montgomery for Mr. Goodale.